1999 UT 78

Janna GRIFFITH, Plaintiff
and Petitioner,

v.

David Gary GRIFFITH, Defendant
and Respondent.

No. 981462.

Supreme Court of Utah.

Aug. 27, 1999.

J. Franklin Allred, Salt Lake City, for plaintiff.

Robert M. McDonald, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

¶ 1 We granted Janna Griffith's ("Janna") petition for a writ of certiorari to review the Utah Court of Appeals' decision in her case. Janna argues that the court of appeals erred in affirming the trial court's: (i) grant of rule 11 sanctions; (ii) attorney fees award to her husband, David Griffith ("David"), based on Judge Rokich's recusal; (iii) assessment of David's income for purposes of alimony and child support; (iv) alimony award; (v) property distribution; and (vi) decision that each party should be responsible for their remaining attorney fees. We will address the first three issues Janna has raised but will not address the remaining issues as we find them to be wholly without merit.

¶ 2 This case began when Janna filed for a divorce from David on September 14, 1994. There were two separate incidents that occurred during the trial of the case that give rise to the first two issues we address: the award of attorney fees related to the first day of trial to David, and what the court of appeals referred to as rule 11 sanctions against Janna and her attorney in connection with a motion to disqualify David's lawyer. We will describe those incidents before addressing any of the issues on the merits.

¶ 3 The first incident relates to Judge Rokich's recusal after the first day of trial. The

case was initially assigned to Judge Rokich. On the merits, one of the central issues was Janna's claim that David was voluntarily underemployed and that the court should impute to him additional income, the effect of which would be to raise the likely award of alimony and child support. David's defense was that he had given up prior part-time side work because of his brother's illness and his father's civic activities, which took David's brother and father away from the family business. When the case came up for trial, and before witnesses were called, Judge Rokich informed the parties that he had had a conversation recently with Paul Griffith, David's brother. Paul was to be called as a witness on the question of underemployment. Judge Rokich told the parties and their counsel that Paul had telephoned him at their mutual physician's suggestion to discuss a treatment that Paul was receiving for an ailment from which they both suffered and which Judge Rokich was considering. After questioning the judge about the conversation, neither attorney voiced any objection to his presiding over the trial. Witnesses were then called and testimony taken. However, at the beginning of the second day of trial, Janna's attorney, J. Franklin Allred ("Allred"), questioned Judge Rokich's impartiality based on the conversation he had had with Paul. Allred stated that he believed Judge Rokich had received information from Paul that "would have been offered in trial under oath." Allred stated that if the judge were to grant a pending motion of Allred's that was aimed at barring Paul from testifying on David's behalf, Allred would be satisfied to have Judge Rokich preside over the trial. Judge Rokich recused himself, stating that Allred's questions and the request to bar Paul's testimony "colored th[e] whole case" and cast a shadow of impropriety over the proceedings. After recusing himself, Judge Rokich entered a judgment jointly against Janna and Allred for $4,542 for the attorney fees incurred by David during the first day of trial and for duplicative work that would be necessary to prepare for the now-postponed trial. His order was based on a factual finding that the questioning of his impartiality and the motion to bar Paul's testimony were made in bad faith.

¶ 4 Following Judge Rokich's recusal, the case was transferred to Judge Dever. Some months later, at the conclusion of the trial on the merits, and upon entry of findings of fact and conclusions of law in February of 1997, Judge Dever ratified Judge Rokich's attorney fees judgment and ordered Janna and Allred to pay David $4,524. Judge Dever found that Rokich's order was appropriate given that Allred had not questioned Judge Rokich's impartiality until the second day of trial.

¶ 5 The second incident relates to the representation of David by Robert McDonald ("McDonald"). In November of 1994, McDonald entered his appearance on behalf of David. Over thirteen months later, Allred filed a motion to disqualify him based on the fact that McDonald had represented Allred in divorce proceedings fifteen years earlier and had been privy to sensitive personal information about him. The motion came before Judge Dever and was found to be without merit. David then filed a motion for rule 11 sanctions against Janna and Allred. In February of 1997, when Judge Dever filed his trial findings of facts and conclusions of law, he held Janna and Allred responsible for the attorney fees incurred by David in defending against Janna's meritless motion to disqualify McDonald. Judge Dever did not say he was basing this order on rule 11.

¶ 6 The final issue we address today relates to Judge Dever's finding on the merits that David was not voluntarily underemployed, and his refusal to impute income to David beyond his salary at Christiansen & Griffith ("C & G"), his family's construction firm.

¶ 7 Janna appealed the above three rulings, *inter alia,* to the court of appeals and it affirmed. We then granted certiorari.

¶ 8 The first issue we address is the court of appeals' affirmance of what it characterized as the trial court's "rule 11 sanctions" against Janna and her attorney, Allred. The court of appeals affirmed, finding the award justified by the trial court's findings that the motion was made in bad faith and was meritless. The court of appeals stated that appellate courts can only overturn an award of

attorney fees based on a finding of bad faith if the trial court abuséd its discretion, and it found no such abuse. *See Griffith v. Griffith,* 959 P.2d 1015, 1021 (Utah Ct.App.1998). Janna contends that the court of appeals applied the wrong standard of review to a rule 11 sanction. If it had applied the correct standard, Janna asserts, it would have overturned the award of fees. We agree with Janna in part, but affirm the sanctions on alternative grounds.

¶ 9 First, the court of appeals did not sufficiently address the standard of review to the extent it treated Judge Dever's imposition of fees as having been done under rule 11.[1] The court of appeals did not determine whether the imposition of sanctions under rule 11 was appropriate. This is not to say the court of appeals applied the wrong standard of review. As we stated in *Barnard v. Sutliff,* 846 P.2d 1229, 1234–35 (Utah 1992), the court of appeals correctly stated in *Taylor v. Estate of Taylor,* 770 P.2d 163, 171 (Utah Ct.App.1989), that there are different standards of review for different aspects of a rule 11 analysis. In this case, the court of appeals skipped directly to the question of whether the amount of sanctions was appropriate rather than first determining whether the imposition of sanctions was appropriate. *See id.*

¶ 10 The proper standard of review was set forth in *Sutliff.* Different aspects of a rule 11 determination are reviewed under different standards; the trial court's ultimate conclusion that rule 11 was violated is reviewed under a correction of error standard. *See id.* at 1234–35. More particularly, we employ three different standards of review in considering a trial court's rule 11 determination, depending on the issue being considered. The trial court's findings of fact are reviewed under a clearly erroneous standard;

its ultimate conclusion that rule 11 was violated and any subsidiary legal conclusions are reviewed under a correction of error standard; and its determination as to the type and amount of sanctions to be imposed is reviewed under an abuse of discretion standard. *See id.* at 1233–35. The court of appeals' application of the abuse of discretion standard to the trial court's determination that rule 11 was violated was therefore error. Applying the correct standard, we first consider the trial court's findings of fact. The trial court found that the fees charged by David's attorney in defending against the motion to disqualify him were necessary and that the time devoted to the defense was reasonable. This finding has evidentiary support and would survive appellate review under the clearly erroneous standard. The trial court also made a factual finding that:

> Plaintiff's Motion to Disqualify Defendant's Attorney filed on January 4, 1996, was not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and was filed for an improper purpose to harass Defendant and cause unnecessary delay and needless increase in the costs of litigation.

We conclude that this purported factual finding, drafted as it was by counsel for the prevailing party, simply paraphrasing the language of rule 11, and standing by itself without any detailed factual findings particularizing its conclusions is insufficiently specific as a matter of law to support the imposition of rule 11 sanctions. We have said that a trial court is required to make explicit findings of fact in support of its legal conclusions. *See Willey v. Willey,* 951 P.2d 226, 230 (Utah 1997). This is particularly necessary in the rule 11 area. The law requires that a trial court make a series of specific factual findings as a predicate for concluding

---

1. Rule 11 states in relevant part:

   (b) *Representations to court.* By presenting a pleading, written motion, or other paper to the court, ... an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

   (1) it is not being presented for any improper purpose, such as to harass or to cause unnec-

   essary delay or needless increase in the cost of litigation;

   (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law;

   . . . .

   Utah R. Civ. P. 11(b)(1), (2).

that the rule has been violated, and then must determine the appropriate sanction. The trial court's findings and conclusions must reveal the court's reasoning clearly enough that an appellate court can apply the appropriate standard of review to each part of the trial court's ruling. What we have before us is plainly insufficient for that purpose. Therefore, Judge Dever's order cannot support rule 11 sanctions.

■ ¶ 11 This is not the end of the matter. Where an "appellate court determines that findings of fact are insufficient to support a necessary legal conclusion, the appellate court will normally remand the matter for further proceedings." *Jeffs v. Stubbs*, 970 P.2d 1234, 1242 (Utah 1998). However, when we look closely at the findings and conclusions, it becomes apparent that although the parties viewed this as an award of fees under rule 11, apparently, because that is what was prayed for, Judge Dever did not.

■ ¶ 12 Judge Dever had McDonald draft the findings of fact and conclusions of law in this case. McDonald proposed a conclusion of law that the motion to disqualify was "in violation of Rule 11." This was consistent with McDonald's motion for sanctions. Judge Dever changed McDonald's original draft to state only that the motion was "without merit." Thus, we conclude that Judge Dever did not purport to act under rule 11, but rather exercised the court's inherent powers to impose monetary sanctions on an attorney for wasting judicial resources when he granted attorney fees to David based on Janna's meritless motion to disqualify McDonald.

¶ 13 This inherent power is well established. As this court noted nearly a century ago:

It is undoubtedly true that courts of general and superior jurisdiction possess certain inherent powers not derived from any statute. Among these are the power to punish for contempt, to make, modify, and enforce rules for the regulation of the business before the court, ... to recall and control its process, to direct and control its officers, including attorneys as such, and to suspend, disbar, and reinstate attorneys. Such inherent powers of courts are necessary to the proper discharge of their duties....

The summary jurisdiction which the court has over its attorneys as officers of the court ... is inherent, continuing, and plenary ... and ought to be assumed and exercised ... not only to maintain and protect the integrity and dignity of the court, to secure obedience to its rules and process, and to rebuke interference with the conduct of its business, but also to control and protect its officers, including attorneys.

*In re Evans*, 42 Utah 282, 130 P. 217, 224–25 (Utah 1913) (cited in *Barnard v. Wassermann*, 855 P.2d 243, 249 (Utah 1993) ("[C]ourts of general jurisdiction ... possess certain inherent power to impose monetary sanctions on attorneys who by their conduct thwart the court's scheduling and movement of cases through the court.")).

■ ¶ 14 Like the attorney fees in *Wassermann*, the attorney fees Judge Dever awarded in this case were a sanction to "compensate for delay, inconvenience and the expense resulting from [the attorney's] behavior." *See Wassermann*, 855 P.2d at 248. Here, the trial court found that the "legal services performed by Defendant's attorney in opposing [the motion] were necessary and the time devoted to each service was reasonable." It further found that the hourly rate charged was reasonable. In light of these findings regarding the reasonableness of the fee, and the meritless nature of the motion, we uphold the grant of attorney fees to David in the amount of $2,588.50 for defending against the motion to disqualify his attorney. We further note that these fees were incurred by David as a result of Janna's attorney's behavior. Therefore, Allred should pay these fees to David rather than Janna. *See id.*

■ ¶ 15 We now turn to the second issue on appeal, whether the court of appeals erred in affirming the award of attorney fees to David based on the proceedings surrounding Judge Rokich's recusal. As noted above, Judge Dever's findings of fact and conclusions of law specifically incorporated Judge Rokich's findings of fact and conclusions of

law, including the finding that Allred's questioning of the judge's impartiality was done in bad faith and that Janna and Allred should be held jointly and severally liable to David for $4,542 in attorney fees.

¶ 16 The court of appeals found that Judge Dever properly relied on Judge Rokich's findings to determine that an award of attorney fees was appropriate. We agree. For the same reasons that Judge Dever had authority to award attorney fees for the meritless motion to disqualify McDonald, he also had authority to award attorney fees based on the waste of the court's and the parties' resources caused by Allred's waiting a day before questioning Judge Rokich's impartiality and by conducting his questioning in such a manner as to precipitate the recusal. *See Wassermann*, 855 P.2d at 248–49. Therefore, we affirm this award. We also hold that because it was Allred's actions that wasted the court's time, he, rather than Janna, should pay the fees to David. *See id.* at 248.

¶ 17 We turn to the final issue we address today, whether the court of appeals erred in affirming the trial court's assessment of David's income for purposes of alimony and child support. On a writ of certiorari, we review the decision of the court of appeals rather than that of the trial court. *See Willey*, 951 P.2d at 230 (citing *Butterfield v. Okubo*, 831 P.2d 97, 101 n. 2 (Utah 1992)). The court of appeals found no abuse of discretion in Judge Dever's fixing of David's income. *See Griffith*, 959 P.2d at 1018–20. The court of appeals applied the correct legal standard. A trial court's determination of alimony and child support are reviewed for an abuse of discretion. *See id.; Savage v. Savage*, 658 P.2d 1201, 1205 (Utah 1983). Therefore, the only issue before us is whether the court of appeals erred in finding no abuse of discretion.

¶ 18 The trial court's determination of David's income addressed the following factual matters: David's side jobs, his bonus income, and his use of the company car. The court of appeals, in considering David's past side-job income, held that the trial court was permitted to take into account both his historical and current earnings to determine whether David was underemployed. *See Hill v. Hill*, 869 P.2d 963, 965–66 (Utah Ct.App.1994). The trial court concluded, after considering the conflicting evidence, that David was not voluntarily underemployed. It based this legal conclusion on findings that: (i) David had stopped performing the side jobs before the couple separated; (ii) David worked fifty hours per week at a demanding job; (iii) C & G appropriately compensated David; and (iv) David's extra work was done to keep the family firm viable. Considering these factual findings, we affirm the court of appeals' conclusion that the trial court did not abuse its discretion in finding that David was not voluntarily underemployed.

¶ 19 Addressing David's bonus income, the trial court concluded that it was appropriate to average David's bonus income over several years. The court of appeals was correct in stating that trial courts have broad discretion in selecting an appropriate method of assessing a spouse's income and will not be overturned absent an abuse of discretion. *See Griffith*, 959 P.2d at 1019. The trial court's decision to average the bonus income was based on its factual findings that David's receipt of a bonus was based entirely on C & G's profitability and that his bonus income had ranged from $15,000 to zero over a five-year period. Given these findings, the court of appeals was correct in concluding that the trial court did not abuse its discretion in deciding to average the bonus income.

¶ 20 Finally, Janna argues that David's use of the company car should be considered income for purposes of alimony and child support. However, the trial court refused to permit her to offer a witness who would testify as to the value of the use of the car. The trial court had ordered the exchange of witness lists to be complete by July 26, 1996, but Janna's attorney failed to timely notify opposing counsel that he intended to call a witness on this subject. For that reason, the trial court refused to allow the witness to testify. The court of appeals found that the trial court did not abuse its discretion in refusing to allow the witness to testify. As we stated in *DeBry v. Cascade*

*Enterprises,* 879 P.2d 1353, 1361 (Utah 1994), the trial court has the necessary discretion to manage its cases and may set dates for the exchange of witness lists. *See id.;* Utah R. Civ. P. 16. If a party or its attorney fails to obey an order for the exchange of such lists, the trial court may "make such orders with regard thereto as are just." Utah R. Civ. P. 16(d). The order refusing to permit the witness to testify is such an order and is a reasonable response to the failure to comply with the court's managerial plan. Therefore, we affirm the court of appeals' ruling that evidence regarding the imputed income from the use of the company car was properly excluded.

¶ 21 In sum, we affirm the court of appeals' ruling regarding David's income, and the attorney fees awards, based on both Judge Rokich's recusal and the motion to disqualify David's attorney. We have considered the remaining issues raised by Janna and find them to be without merit. We therefore affirm.

¶ 22 Chief Justice HOWE, Associate Chief Justice DURHAM and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

¶ 23 Justice STEWART concurs in the result.