2000 UT 86

**Clare T. MORSE, an individual, Plaintiff,**

v.

**Lynn PACKER, an individual, Defendant and Appellant.**

**Timothy M. Willardson, Real Party in Interest and Appellee.**

No. 990304.

Supreme Court of Utah.

Oct. 27, 2000.

Rehearing Denied Dec. 5, 2000.

Lynn Packer, North Salt Lake, pro se.

Michael S. Eldredge, Orem, for Willardson.

RUSSON, Associate Chief Justice:

¶ 1 Lynn Packer appeals from the district court's denial of his request for rule 11 sanctions against attorney Timothy Willardson, who allegedly made false representations before the district court. We reverse and remand.

## BACKGROUND

¶ 2 In December 1996, Lynn Packer, a freelance reporter, began a journalistic investigation into the business activities of Jeril Winget and Paul H. Dunn. At the time, Packer was preparing a news article to be published in the *Private Eye Weekly* newspaper.[1] In the course of his investigation, Packer discovered that Winget and his business partner, Clarence "Clare" T. Morse, were involved in various business ventures beset with problems. While looking into these business ventures, Packer discovered that a Form 8–K had been filed with the United States Securities and Exchange Commission revealing that a California corporation, Residential Resources Inc. ("RRI"), had removed Morse from its board of directors under suspicion of "acts involving moral turpitude" and "acts of a potential unlawful nature." Packer's article was eventually published in the *Private Eye Weekly* on February 27, 1997.

¶ 3 Prior to the article's publication, Morse filed an action against Packer in the district court on January 27, 1997. The verified complaint sought injunctive relief and raised causes of action for slander and intentional interference with business relations. Morse's complaint alleged that Packer had made various "false and defamatory statements" about Morse to Morse's business associates, causing Morse to lose financing for valuable projects. For example, Morse alleged, Packer falsely represented that Morse had been removed as secretary of a California corporation because of dishonesty. Both Morse and his attorney, Timothy M. Willardson, signed the verified complaint.

¶ 4 On February 5, 1997, Morse moved for a temporary restraining order ("TRO") to prevent Packer from "contacting business associates and contacts" of Morse. The district court heard arguments on the TRO motion that same day. At the hearing, Packer presented to the district court for the first time the Form 8–K, which stated that Morse had been discharged from RRI. Packer argued that the Form 8–K controverted the allegation in the complaint that Morse had not been discharged as an officer of a California corporation, and thus exonerated Packer from Morse's complaint that Packer had been making false statements about Morse. Willardson denied having ever seen the Form 8–K and did not object to its admission as an exhibit. The district court denied the motion for a TRO, concluding that Morse failed to establish that Packer's investigation posed a threat of irreparable harm to Morse.

¶ 5 On February 20, 1997, Packer filed a rule 11 motion against Willardson, seeking dismissal of the action, an award of attorney fees and costs, and the imposition of sanctions against Willardson. Packer alleged in his motion that Willardson violated rule 11 by making representations of fact without conducting a reasonable inquiry into their evidentiary basis. Packer alleged that Willardson had made numerous misrepresentations to the court, including (1) his statement in the complaint (which Willardson and Morse both signed) that Packer falsely represented to Morse's business associates that Morse had been discharged as the secretary of a California corporation, and (2) his oral statement at the TRO hearing that he had never seen the Form 8–K.[2] Packer attached as an exhibit to his rule 11 motion a copy of a motion to strike that Willardson had filed in a separate lawsuit in which Willardson was representing Morse. The motion to strike had been directed at the Form 8–K, a copy of which the opposing party had filed in support of its complaint against Morse.[3]

---

1. The *Private Eye Weekly,* now known as the *Salt Lake City Weekly,* is an independent local publication.

2. Packer alleged that Willardson, and also Morse, had made numerous additional misrepresentations. However, these additional purported misrepresentations are not pertinent to this appeal.

3. In the instant action, Willardson did not object to or move to strike the copy of the motion to

¶ 6 Willardson filed a memorandum in opposition to the rule 11 motion on March 5, 1997, in which he argued that he did not make any false statements and that he had made a reasonable inquiry into all of the allegations in the complaint. Willardson also reiterated in his memorandum that he had not seen the Form 8–K.

¶ 7 Packer filed a reply memorandum on March 14, 1997, repeating the arguments made in his rule 11 motion. Packer also argued that Willardson's denial, in his memorandum in opposition, of having seen the Form 8–K was an additional violation of rule 11.

¶ 8 On March 14, 1997, Packer moved for a hearing on the rule 11 motion. That same day, Willardson withdrew as Morse's attorney. On April 11, 1997, the district court heard arguments on the rule 11 motion and ordered that the motion be continued until the underlying case was concluded.[4]

¶ 9 On May 27, 1997, Willardson filed an affidavit in connection with the rule 11 motion. Willardson contended in his affidavit that the April 11 hearing on the rule 11 motion refreshed his memory of the Form 8–K, and he recalled filing a motion to strike the Form 8–K as an exhibit in a separate lawsuit he had been litigating on behalf of Morse. Willardson claimed that he had not seen the document since January 9, 1997, and had forgotten about having seen it by the time of the February 5 TRO hearing, at which he had claimed never to have seen the document.[5] Willardson also claimed in his affidavit that he had filed the verified complaint in this action after communicating with Morse and other individuals. Willardson claimed that Morse represented that he would procure affidavits from these individuals and that Morse attested to the facts alleged in the complaint.

¶ 10 On July 21, 1997, Packer moved for summary judgment in the underlying action filed by Morse on the basis of Morse's alleged "abuse of process, malicious prosecution, failure to prosecute, and failure to grant discovery." On August 18, 1997, the district court granted summary judgment in favor of Packer, concluding that Morse "failed to respond to the Motion within 10 days as required by rule 4–501(1)(b) of the Utah Code of Judicial Administration."

¶ 11 On September 5, 1997, after the underlying dispute between Morse and Packer was concluded, the district court heard oral argument on Packer's motion for rule 11 sanctions against Willardson.[6] The court denied the motion and entered an order stating:

Having heard argument on the matter, and having received and considered Defendant's Motion, together with memoranda in support of and in opposition to the Motion, the Court hereby makes the following Order.

### ORDER

Defendant's Motion for Sanctions is hereby DENIED.

¶ 12 Packer appealed to this court. However, because the district court had not included findings or other appropriate explanation for its denial of the rule 11 motion, we remanded the matter back to that court for the entry of an order that more fully explained its rationale in denying sanctions. See Morse v. Packer, 1999 UT 5, ¶ 14, 973 P.2d 422.

¶ 13 After remand, the district court entered a second order denying the rule 11 motion. This order set forth the district court's rationale in denying the motion as follows:

A statement is not subject to sanctions simply because it is disagreeable to the

---

strike that Packer submitted as an exhibit to his rule 11 motion.

4. The record before us on appeal lacks any transcript of this hearing.

5. Specifically, Willardson averred: "I had forgotten about having seen [the Form 8–K] by the time of the hearing in March." However, there

was no hearing in this case in March. Rather, during the TRO hearing that took place on February 5, 1997, Willardson denied having seen the document. We thus assume that Willardson was referring to the February hearing.

6. No transcript of this hearing was included in the record before us on appeal.

opposing party. Instead the statement must be based upon a reasonable inquiry.... [T]he contention need not be correct, so long as the inquiry was reasonable....

Throughout his supporting memoranda, Packer alleges Willardson would have known the falsity of the alleged statements if he, Willardson, had made a reasonable inquiry. However, Packer does not provide any evidence to support his claim that Willardson's statements were false, nor does he indicate what evidence if any Willardson could have found that would have led him to the truth as Packer saw it. Further, Packer does not state exactly what type of inquiry Willardson did make or how Willardson could have changed the method of his inquiry to discover the truth.

Instead it is clear that Willardson chose to rely on the representations of his client, Morse, who also signed the verified complaint, and that Willardson had no reason to believe that his client was being false.

Therefore, without more than bare accusations unsupported by evidence this court cannot conclude that Willardson's inquiry was unreasonable.

Packer now appeals the district court's second order denying his rule 11 motion. He raises three arguments in this appeal. First, Packer argues that the district court erred when it postponed hearing the motion until the underlying case was resolved. Second, Packer argues that the district court erred in denying his motion for sanctions under rule 11. Third, Packer urges this court to enter an order of sanctions against Willardson. We address each argument in turn.

## ANALYSIS

### I. TIMELINESS OF THE DISPOSITION OF THE RULE 11 MOTION

¶ 14 Packer's first argument is that the district court erred when it postponed hearing the motion until after the underlying dispute between Morse and Packer had been resolved. It is generally recognized, and Packer concedes, that the time to rule on a rule 11 motion is within the discretion of the district court. *See Cooter & Gell v. Hart-marx Corp.*, 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Moreover, as we stated in *Clark v. Booth*, 821 P.2d 1146, 1148 (Utah 1991), "[s]anctions ... imposed under rule 11 ... may be assessed at any time during the course of a judicial proceeding." Thus, it was within the discretion of the district court to postpone deciding the rule 11 motion until after the underlying dispute in this case was resolved. There is no indication that the district court's decision to postpone hearing the motion was an abuse of discretion, and thus, Packer's first claim fails.

### II. THE COURT'S DENIAL OF THE RULE 11 MOTION

¶ 15 Packer's second claim is that the district court erred when it denied the rule 11 motion. Specifically, Packer argues that the court (1) cited the incorrect version of rule 11; (2) failed to set forth findings in support of its ruling or, in the alternative, listed findings that were unsupported by the evidence in the record; and (3) reached an incorrect legal conclusion when it held that Willardson had not violated rule 11.

¶ 16 As we stated in our previous ruling in this case, the standard of review for evaluating the denial or imposition of rule 11 sanctions involves a three-tiered approach: "(1) findings of fact are reviewed under the clearly erroneous standard; (2) legal conclusions are reviewed under the correction of error standard; and (3) the type and amount of sanction to be imposed is reviewed under an abuse of discretion standard." *Morse v. Packer*, 1999 UT 5, ¶ 10, 973 P.2d 422 (citing *Barnard v. Sutliff*, 846 P.2d 1229, 1234 (Utah 1992)). Keeping in mind these standards of review, we address Packer's arguments in turn.

#### A. The Applicable Version of Rule 11

¶ 17 Packer argues that it was error for the trial court to apply the amended version of rule 11, which was in effect at the time of the court's ruling, rather than the version of rule 11 that was in effect at the

time Willardson filed the complaint.[7] However, Packer fails to cite or acknowledge rule 1(b) of the Utah Rules of Civil Procedure. This rule states that the rules of civil procedure

> govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies.

Utah R.Civ.P. 1(b). Thus, under rule 1(b), the rules as amended govern all proceedings, even in pending actions, and the court has the discretion to apply the pre-amendment version of a rule only when use of the amended rule would not be feasible or just.

¶ 18 We examined rule 1(b) in *Jensen v. Eames*, a case in which an amended version of rule 64C had become effective after the action was commenced.[8] *See* 30 Utah 2d 423, 427, 519 P.2d 236, 238 (1974). In that case, the plaintiff argued that the amended rule should be applied, while the defendant contended that the pre-amendment version should be applied. *See id.* After citing rule 1(b), we explained, "This type of problem involves a common sense and equitable accommodation of the amended rules to pending actions. If rights will be impaired, the amended procedure should not be applied, but where there will be no impairment the remedial provisions of the amended rules should be applied." *Id.* (citing 7 James Wm. Moore, *Moore's Federal Practice* § 86.03[2], at 86–13 (2d ed.)).

¶ 19 Packer has not suggested that use of the amended rule was not feasible or just,

and he has not contended that the district court's use of the amended rule impaired his rights. Thus, the district court applied the correct version of rule 11.

### B. *The District Court's Findings*

¶ 20 Packer next argues that the district court failed to comply with our directive in our previous ruling to include factual findings in its order denying the rule 11 motion. He claims that the district court's order lacks any findings whatsoever and in the alternative that any findings in the order are unsupported by the evidence in the record.

¶ 21 We conclude that the district court included in its order an adequate explanation for its ruling, including findings. The district court stated:

> Packer does not provide any evidence to support his claim that Willardson's statements were false, nor does he indicate what evidence if any Willardson could have found that would have led him to the truth as Packer saw it.... [I]t is clear that Willardson chose to rely on the representations of his client, Morse, who also signed the verified complaint, and that Willardson had no reason to believe that his client was being false.

We now must examine each of these findings for clear error in light of the evidence in the record. *See Sutliff*, 846 P.2d at 1235.

 ¶ 22 We first turn to the finding that Packer failed to provide evidence to support his claim that Willardson made false statements of fact, and that he failed to indicate what evidence Willardson could have found that would have led him to the truth. Our examination of the record reveals two documents that Packer submitted to the district

---

7. Packer complains that the version of rule 11 that was in effect at the time the complaint was filed requires that pre-filing inquiries be reasonable and that the complaint be well grounded in fact. He argues that by applying the amended version, the district court did not address whether the complaint was well grounded in fact. The version of rule 11 of the Utah Rules of Civil Procedure in effect at the time the complaint was filed provides that "to the best of his knowledge, information, and belief formed after reasonable inquiry [the pleading or motion] is well grounded in fact." The amended version of rule 11 pro-

vides that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the allegations and other factual contentions have evidentiary support."

8. Rule 64C sets forth the procedures governing attachment. The amendment at issue in *Jensen* deleted from rule 64C a $10,000 limitation upon the amount of an undertaking necessary to release property from the attachment. *See Jensen*, 30 Utah 2d at 427, 519 P.2d at 238.

court, both of which supported his rule 11 motion.[9] First, the Form 8–K, which Packer submitted as an exhibit at the TRO hearing and attached as an exhibit to his rule 11 motion, clearly states that on November 14, 1996, Morse had been discharged as the secretary of RRI due to "serious acts of a potential unlawful nature" and "acts involving moral turpitude." Second, a copy of Willardson's motion to strike from the separate lawsuit was filed as an exhibit along with the rule 11 motion. The motion to strike, which Willardson had filed on January 9, 1997, was clearly directed at the Form 8–K, which the opposing party in that lawsuit had attached as an exhibit to its complaint.

¶ 23 These two documents controvert three specific representations made by Willardson before the district court.[10] First, Willardson alleged in the complaint that Packer had falsely represented to Morse's business associates that Morse had been removed as secretary of a California corporation because of dishonesty. The Form 8–K reveals that if Packer had made such a statement, it was true and thus Willardson's contrary allegation in the complaint was false. Second, Willardson represented at the February 5 TRO hearing that he had never before seen the Form 8–K, and third, he reiterated in his memorandum in opposition to the rule 11 motion that he had not seen the Form 8–K. The motion to strike demonstrates that Willardson had indeed seen the Form 8–K prior to that time, as it was the very subject of his own motion in a separate lawsuit.

¶ 24 Moreover, Willardson had access to the Form 8–K and the motion to strike prior to making these three representations, and thus, he had access to information that would have led him to the truth. Thus, in light of these two documents, the district court clearly erred when it found that Packer failed to present any evidence to support his claim that Willardson made misrepresentations of fact and that Packer failed to indicate what evidence should have led Willardson to the truth.

¶ 25 We next turn to the district court's finding that Willardson had no reason to disbelieve his client, Morse. This finding is called into question by the fact that Willardson had seen the Form 8–K at least as early as January 9, 1997, when he filed the motion to strike in the separate lawsuit. The complaint in the instant case was filed less than three weeks later, on January 27, 1997. Thus, at the time Willardson filed the complaint in this case, he had already seen the Form 8–K. This should have provided ample justification for disbelieving any assertion that Morse might have made that he had not been discharged. Therefore, the district court's finding that Willardson had no reason to disbelieve his client was clearly erroneous.

### C. Violation of Rule 11

¶ 26 Having thus concluded that Willardson made three misrepresentations of fact before the district court and that he had access to the Form 8–K, which refuted his representations, before he even instituted

9. Packer submitted additional exhibits during the course of litigating this case, none of which establishes that Willardson made any misrepresentation. Moreover, Packer has cited several telephone conversations, interview notes, and other purported evidence, but we limit our review of the district court's factual findings to the evidence in the record.

10. Packer listed numerous additional purported misrepresentations, but he failed to provide any record evidence to show that these representations were false. For example, Packer argued that the following allegations in the verified complaint were false: (1) Packer made "false and defamatory statements" about Morse to Morse's business associates; (2) Packer made these statements with the "improper purpose" of "assist[ing] third parties in obtaining revenge"

against Morse; (3) Packer caused Morse to lose interim financing for a project known as "Tonga 2000," worth $100 million; (4) Packer misrepresented himself to Morse's business associates as "part of a fraud investigation team"; and (5) Packer was "officiously intermeddling in [Morse's] affairs and has no legitimate reason, nor any privilege to do so." Packer also alleged that the following oral statements, made on the record by Willardson at the February 5 TRO hearing, were false: (1) Morse had lost financing for a home after Packer misrepresented himself to lending officers as a detective investigating Morse for fraud, and (2) Morse had been reinstated as a secretary of RRI. Our review of the record indicates that Packer failed to submit any evidence to suggest that these statements were false.

this action, we now must determine whether, in light of these misrepresentations, the district court properly ruled that Willardson did not violate rule 11. Packer argues that Willardson failed to make a reasonable inquiry, as required by rule 11, into whether each of his factual contentions was supported by the evidence.[11] The district court's ruling that rule 11 was not violated is a legal conclusion that we review for correctness. *See Griffith v. Griffith,* 1999 UT 78, ¶ 10, 985 P.2d 255.

¶ 27 Rule 11 states in pertinent part:

(a) *Signature.* Every pleading, written motion, and other paper shall be signed by at least one attorney of record. . . .

(b) *Representations to court.* By presenting a pleading, written motion, or other paper to the court (whether by signing, filing, submitting, or later advocating), an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* [T]he court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b). . . .

Utah R.Civ.P. 11 (amended 1997). To date, this court has not examined subpart (b)(3) of rule 11, which governs an attorney's factual contentions, nor have we addressed rule 11 as amended. The 1997 amendment "conform[ed] state Rule 11 with federal Rule 11," Utah R.Civ.P. 11 advisory committee note, and we therefore seek guidance from authorities examining federal rule 11. While we are not bound by these authorities, they are helpful to our understanding of the rule. *See Sutliff,* 846 P.2d at 1233.

¶ 28 "Rule 11 places an affirmative duty on attorneys and litigants to make a reasonable investigation (under the circumstances) of the facts and the law before signing and submitting any pleading, motion, or other paper." 2 James Wm. Moore, *Moore's Federal Practice* § 11.11[2][a] (Matthew Bender, 3d ed.2000).

> Rule 11 does not call for the imposition of sanctions whenever there are factual errors; the misstatements must be significant and sanctions will not be imposed when they are not critical and the surrounding circumstances indicate that counsel did conduct a reasonable inquiry. . . . [T]he fact that a complaint is dismissed for legal insufficiency or does not produce a triable issue does not necessarily mean that a sanction is appropriate.

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1335, at 67, 88 (1990). Moreover, as we stated in *Sutliff,* "Rule 11 does not impose a duty to do perfect or exhaustive research. The appropriate standard is whether the research was objectively reasonable under all the circumstances." 846 P.2d at 1236.

██ ¶ 29 As discussed above, Willardson made three separate misrepresentations of fact before the district court. We address each misrepresentation in turn to determine whether Willardson violated rule 11. First, in his complaint, Willardson stated: "Packer has represented to persons contacted by him that plaintiff Morse has been removed as Secretary of a California corporation because

11. Packer also contends that Willardson presented the verified complaint in this case for an improper purpose, in violation of subdivision (b)(1) of rule 11. However, Packer has failed to present any evidence to demonstrate such an improper purpose. We therefore do not address this argument.

of dishonesty.... [This] statement[ ], or statements of similar import, [is] false." As the Form 8–K demonstrates, Morse had been removed as secretary of RRI, a California corporation. Additionally, it is clear from the record that Willardson had access to the Form 8–K prior to filing the complaint because the Form 8–K was the subject of a motion to strike that he had recently filed on behalf of Morse in a separate lawsuit. Under these circumstances, where Willardson had access to, and must have seen, information flatly contradicting an allegation in his complaint, a reasonable inquiry would have necessitated more adequate research of the facts. Willardson's failure to adequately research the facts resulted in his making a statement in his pleading that clearly lacked evidentiary support. In so doing, Willardson violated rule 11.

¶ 30 We now turn to Willardson's second misrepresentation: his oral statement at the TRO hearing that he had never seen the Form 8–K. As demonstrated by the motion to strike from the unrelated lawsuit, Willardson had seen the Form 8–K before. Thus, this statement was false. Willardson argues, however, that his oral misrepresentation did not violate rule 11 because the rule applies only to written, not oral, statements.

■ ¶ 31 We disagree with Willardson's interpretation of the rule. Rule 11, by its express terms, applies to the *"presenting* [of] a pleading, written motion, or other paper to the court (whether by signing, filing, submitting, or *later advocating*)." Utah R.Civ.P. 11(b) (emphasis added). Thus, oral representations made in the course of advocating a written pleading may also fall within the purview of rule 11. However, rule 11's application to oral statements is limited. As the advisory committee for federal rule 11 explained:

> The rule applies only to assertions contained in papers filed with or submitted to the court. It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection. However, a litigant's obligations with respect to the contents of

these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.

Fed.R.Civ.P. 11 advisory committee note; *see also O'Brien v. Alexander,* 101 F.3d 1479, 1490 (2d Cir.1996) ("That an oral statement is made in the course of advocating a pleading or motion is not enough; to be sanctionable the oral statement must relate directly to a particular representation contained in the document that the lawyer is then advocating.").

■ ¶ 32 In the case before us, Willardson's denial that he had seen the Form 8–K, while factually inaccurate, was in no way connected to a false representation made in his pleadings. Rather, his statement involved a matter raised for the first time in oral argument, about which Willardson had little time to reflect. Thus, Willardson's oral statement did not fall within the purview of rule 11.

■ ¶ 33 Willardson's third misrepresentation in this case, his reiteration in the memorandum in opposition to the rule 11 motion that he had never seen the Form 8–K, does fall within the purview of rule 11. He filed this memorandum on March 5, 1997, one month after the TRO hearing at which Packer first presented the Form 8–K to Willardson and the court, and at which Willardson denied having seen the Form 8–K. Moreover, Willardson's memorandum was filed in opposition to Packer's rule 11 motion, which included as an exhibit the motion to strike, making it clear that Willardson had dealt with the Form 8–K in the separate lawsuit.

¶ 34 As discussed above, Willardson had little time to reflect when he orally denied, at the TRO hearing, having seen the Form 8K. However, after the TRO hearing and after the rule 11 motion was filed along with a copy of the motion to strike, Willardson had ample opportunity to carefully reconsider whether he had in fact seen the Form 8–K. Under these circumstances, a reasonable inquiry would have involved, at a minimum, examining the rule 11 motion and its accom-

panying exhibits prior to reiterating the inaccurate, mistaken allegations that precipitated the rule 11 motion. Rather than making such a reasonable inquiry, Willardson instead proceeded to make a written representation to the court that lacked evidentiary support.

¶ 35 On May 27, 1997, nearly three months after Willardson made this misrepresentation in his memorandum in opposition, he filed an affidavit conceding that he had misstated the facts. He claimed that his memory had finally been refreshed, and he recalled having seen the Form 8–K prior to instituting the action against Packer. While it is laudable for an attorney to attempt to rectify such a mistake, Willardson's belated affidavit is still inadequate because he failed to make a reasonable inquiry before he made the misrepresentation. Because he failed to make an inquiry that was reasonable under the circumstances, Willardson violated rule 11 when he denied having seen the Form 8–K.

### III. IMPOSITION OF SANCTIONS

 ¶ 36 Packer urges this court to enter an order of sanctions against Willardson. However, the type and amount of sanctions to be imposed for a violation of rule 11 is within the discretion of the district court. *See Barnard v. Sutliff*, 846 P.2d 1229, 1235 (Utah 1992). We therefore remand this case for further action consistent with this opinion.

¶ 37 Chief Justice HOWE, Justice DURHAM, Justice WILKINS, and Judge ORME concur in Associate Chief Justice RUSSON's opinion.

¶ 38 Having disqualified himself, Justice DURRANT does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.