2008 UT App 28

**Karen Jean BUCK, Petitioner and Appellee,**

v.

**Robert Dean ROBINSON, Respondent and Appellant.**

No. 20060760–CA.

Court of Appeals of Utah.

Jan. 25, 2008.

Michael J. Boyle, Ogden, for Appellant.

Brent M. Johnson, Salt Lake City, for Amicus Curiae.

Before GREENWOOD, P.J., DAVIS and McHUGH, JJ.[1]

---

1. This court notified counsel that Judge James Z. Davis, a member of the panel scheduled to decide the case, was a member of the Utah Judicial Council, amicus curiae. Although disqualification did not appear to be required under Cannon 3 of the Code of Judicial Conduct, the parties

OPINION

GREENWOOD, Presiding Judge:

¶ 1 Respondent Robert Dean Robinson appeals from a decision of the trial court declaring that allowing court commissioners to hold evidentiary hearings and make recommendations in contested protective order proceedings is permitted by statute and court rules and is not unconstitutional. *See* Utah Code Ann. § 30-6-4.3(1)(e) (2007); Utah R. Jud. Admin. 6-401(2)(D), (F). Robinson also appeals the trial court's ruling that he was not entitled to a jury trial under the United States or Utah Constitutions on a petition for a protective order. *See* U.S. Const. amend. VII; Utah Const. art. I, § 10. He further claims that he was wrongfully denied an evidentiary hearing before the district court and sanctioned for violating rule 11. *See* Utah R. Civ. P. 11. We affirm.

BACKGROUND

¶ 2 Petitioner Karen Jean Buck[2] obtained an Ex Parte Protective Order against Robinson on February 9, 2006. The ex parte order provided that it was effective from the date of service on Robinson, until—after an opportunity for a hearing—service of a protective order or denial of a protective order.[3] Robinson was served with the ex parte order and appeared pro se to oppose issuance of a protective order at a hearing before a court commissioner on February 27, 2006. Buck also appeared, with counsel, and both parties testified. The commissioner signed a protective order against Robinson and filled in the included form. The protective order is a preprinted form with a number of sections constituting possible findings. The commissioner checked the applicable sections and signed following the words "Recommended by." That same day, a district court judge signed the protective order on the line designated as "the court."

¶ 3 In March 2006, Robinson, through counsel, filed a Motion and Memorandum Seeking to Declare as Unconstitutional the Practice of Allowing Commissioners to Conduct Evidentiary Hearings in Protective Order Matters and Facial Challenge to the Cohabitant Abuse Act. Robinson did not challenge or object to the substantive validity of the commissioner's findings. Subsequently, Robinson filed a Notice to Submit for Decision. The trial court issued a ruling denying Robinson's motion and also issued an Order to Show Cause Why Sanctions Should Not Be Imposed against Robinson's counsel. After the show cause hearing, the trial court imposed a sanction of a $100 fine against counsel. The basis for the sanction was that counsel had previously submitted an identical motion in a previous case before another judge in the second district, claiming that there was a right to a jury trial in Cohabitant Abuse Act proceedings. The judge in that action had denied the motion, but counsel had not disclosed the existence of the prior motion and ruling when submitting the identical issue in this case. Therefore, the trial court found counsel had violated rule 11 of the Utah Rules of Civil Procedure by making the identical argument in this case. *See id.* R. 11(b). Robinson appeals.

ISSUES AND STANDARDS OF REVIEW

¶ 4 Robinson contends that his constitutional rights were violated when the court

---

were invited to file a motion seeking disqualification if they wished to do so. The parties did not respond. At oral argument, Judge Davis's membership on the Judicial Council was again disclosed and there was no objection to his participation in the case.

2. Buck did not file a brief, nor otherwise participate in this appeal. The Utah Judicial Council filed an amicus brief and at our request, participated in oral argument.

3. Section 30-6-4.3 of the Utah Code explains the difference between an ex parte protective order and a protective order. The statute states:
    (1) (a) When a court issues an ex parte protective order the court shall set a date for a

hearing on the petition within 20 days after the ex parte order is issued.
    (b) If at that hearing the court does not issue a protective order, the ex parte protective order shall expire, unless it is otherwise extended by the court.
    (c) If at that hearing the court issues a protective order, the ex parte protective order remains in effect until service of process of the protective order is completed.
    (d) A protective order issued after notice and a hearing is effective until further order of the court.
Utah Code Ann. § 30-6-4.3(1)(a)-(d) (2007).

commissioner conducted an evidentiary hearing and made a recommendation on the petition for a protective order. Robinson also argues that the commissioner exceeded his authority under rule 6–401(2)(J) of the Utah Rules of Judicial Administration in holding the hearing and that he was denied his statutory right to a hearing before a district court judge. *See* Utah R. Jud. Admin. 6–401(2)(J). In addition, Robinson urges that the Cohabitant Abuse Act is unconstitutional because it does not provide for trial by jury. Each of these issues present questions of law that we review for correctness, according no deference to the trial court. *See Utah Safe to Learn–Safe to Worship Coal., Inc. v. State,* 2004 UT 32, ¶ 10, 94 P.3d 217 ("Because the issue of constitutionality presents a question of law, we review the trial court's ruling for correctness and accord it no particular deference." (internal quotation marks omitted)); *City of Monticello v. Christensen,* 788 P.2d 513, 516 (Utah 1990) ("[W]e accord a lower court's statement of the law, statutory interpretation, or legal conclusion no particular deference, but review it for correctness.").

¶ 5 Robinson also claims that the trial court erred in sanctioning his counsel for a violation of rule 11. Our review is three-tiered: "(1) findings of fact are reviewed under the clearly erroneous standard; (2) legal conclusions are reviewed under the correction of error standard; and (3) the type and amount of sanction to be imposed is reviewed under an abuse of discretion standard." *Morse v. Packer,* 2000 UT 86, ¶ 16, 15 P.3d 1021 (internal quotation marks omitted).

## ANALYSIS

### I. Constitutionality of Commissioners' Actions

■ ¶ 6 Robinson argues that allowing *court commissioners to conduct evidentiary* hearings and make recommendations is an unconstitutional delegation of core judicial tasks that are the exclusive province of judges. Robinson relies almost exclusively on this court's decision in *Holm v. Smilowitz,* 840 P.2d 157 (Utah Ct.App.1992). That reliance is misplaced. In *Holm,* the commissioner had exceeded her authority as delin-

eated in Utah Code section 78–3–31 and rule 6–401(6)(A) of the Utah Rules of Judicial Administration. *See id.* at 168. The majority of the court, in a concurring opinion by Judge Orme joined by Judge Billings, stated that "since the commissioner's actions were not even authorized by statute or rule, we see no need to opine about the constitutional implications of such actions." *Id.* at 169 (Orme, J., concurring) (emphasis omitted). Consequently, *Holm* does not aid us in determining the constitutionality of the commissioner's actions because the majority did not address that issue.

■ ¶ 7 Robinson does not cite nor discuss the pivotal case on this subject, *Salt Lake City v. Ohms,* 881 P.2d 844 (Utah 1994). However, amicus counsel does provide a discussion of *Ohms* and its significance in this case. In *Ohms,* the defendant was convicted of a class C misdemeanor after a trial conducted by a court commissioner. *See id.* at 846. The statute in effect at that time allowed a court commissioner to conduct a jury or non-jury misdemeanor trial, if the defendant gave informed consent. *See id.* at 848. The constitutionality of the statute was challenged on appeal to the Utah Supreme Court. The supreme court agreed that section 78–3–31 of the Utah Code was unconstitutional to the extent that it granted core judicial functions to non-judges, including the power to enter final judgments and impose criminal sentences. *See id.* at 855. The court also discussed the appropriate role of commissioners. The court stated:

> As adjuncts of the court to which they are appointed, court commissioners are authorized to exercise certain functions to assist the court in the exercise of its core judicial powers. For example, Utah Code Ann. § 78–3–31(9) (1992) provides that the judicial council establish the types of orders and relief commissioners may *recommend.* Such provisions are constitutionally sound, since ultimate decision making remains with the judge.
>
> .... Court commissioners have provided a valuable service to the judiciary for over thirty years pursuant to constitutionally valid statutes. They have conducted fact-

finding hearings, held pretrial conferences, made recommendations to judges, and provided counseling and other worthwhile functions. However, over that thirty-year period, commissioners were never allowed to perform ultimate or core judicial functions such as entering final orders and judgments or imposing sentence. In every case, commissioner actions led to recommendations which resulted in final review and signature by a judge.

*Id.* at 851 n. 17. The court reasoned that non-judges should not be assigned core judicial duties because "[t]here are no provisions which subject them to the constitutional checks and balances imposed upon duly appointed judges of courts of record." *Id.* at 851. However, court commissioners, as adjuncts to the courts, may assist the courts in fulfilling their duties. *See id.*

■ ¶ 8 In *State v. Thomas,* 961 P.2d 299 (Utah 1998), the Utah Supreme Court clarified that core judicial functions include:

(1) the power to hear and determine controversies between adverse parties and questions in litigation, (2) the authority to hear and determine justiciable controversies, (3) *the authority to enforce any* valid judgment, decree, or *order,* and (4) all powers that are necessary to protect the fundamental integrity of the judicial branch.

*Id.* at 302 (internal quotation marks omitted). Core judicial functions, however, "do not include functions that are generally designed to 'assist' courts, such as conducting fact finding hearings, holding pretrial conferences, and making recommendations to judges. In these instances, the commissioners' actions are reviewable by a judge; thus, ultimate judicial power remains with the judge." *Id.* (quoting *Ohms,* 881 P.2d at 851 n. 17).

¶ 9 Current versions of the Utah Code and court rules are consistent with the *Ohms* and *Thomas* decisions. Section 78–3–31(8) of the Utah Code states that

the Judicial Council shall make uniform statewide rules defining the duties and authority of court commissioners for each level of court they serve.... The rules shall at a minimum establish:

(a) types of cases and matters commissioners may hear;

(b) types of orders commissioners may recommend;

(c) types of relief commissioners may recommend; and

(d) procedure for timely judicial review of recommendations and orders made by court commissioners.

Utah Code Ann. § 78–3–31(8) (2002).

¶ 10 Pursuant to that statutory directive, the Utah Rules of Judicial Administration provide that a court commissioner may "[m]ake recommendations to the court regarding any issue, including a recommendation for entry of final judgment, in domestic relations or spouse abuse cases at any stage of the proceedings." Utah R. Jud. Admin. 6–401(2)(D). A commissioner may "conduct evidentiary hearings" prior to making such recommendations. *Id.* R. 6–401(2)(F). In addition, rule 7(g) of the Utah Rules of Civil Procedure states that "[a] recommendation of a court commissioner is the order of the court until modified by the court. A party may object to the recommendation by filing an objection in the same manner as filing a motion within ten days after the recommendation is made in open court." Utah R. Civ. P. 7(g).

¶ 11 More specifically applicable to this case, section 30–6–4.3 of the Cohabitant Abuse Act provides, in part, that:

(d) A protective order issued after notice and a hearing is effective until further order of the court.

(e) If the hearing on the petition is heard by a commissioner, either the petitioner or respondent may file an objection within ten days of the entry of the recommended order and the assigned judge shall hold a hearing within 20 days of the filing of the objection.

Utah Code Ann. § 30–6–4.3(1)(d)–(e) (2007).

¶ 12 Thus, the procedures and authority of court commissioners as authorized by statute and court rules are clearly compliant with the constitutional requirements described by the supreme court in *Ohms* and *Thomas,* and do not include nondelegable core judicial

functions. Consequently, Robinson's constitutional rights were not violated when the court commissioner held an evidentiary hearing, made proposed findings, and made a recommendation to be acted upon by a judge in this protective order proceeding.

## II. Compliance with Statute and Rules

■ ¶ 13 Robinson argues that the court commissioner was not authorized to hold an evidentiary hearing because of rule 6–401(2)(J). *See* Utah R. Jud. Admin. 6–401(2)(J). This rule states: "[Court commissioners may c]onduct settlement conferences with the parties and their counsel in a domestic relations case. Issues that cannot be settled shall be certified to the district court for trial." *Id.* Another subpart of the same rule, however, refers to both domestic relations and spouse abuse cases: "[Court commissioners are authorized to m]ake recommendations to the court regarding any issue, including a recommendation for entry of final judgment, in domestic relations or spouse abuse cases at any stage of the proceedings." *Id.* R. 6–401(2)(D). There is no specific provision in the Cohabitant Abuse Act for settlement conferences, and in this case there is nothing in the record indicating that a settlement conference ever occurred. Therefore, there was no requirement that the case be referred to the district court. As a result, rule 6–401(2)(J) is inapplicable.

## III. Right to a Hearing

■ ¶ 14 Robinson also claims that he was wrongfully denied a hearing before a district judge. As previously noted, the Cohabitant Abuse Act provides that if a court commissioner conducts the hearing on a petition for a protective order, "either the petitioner or respondent may file an objection within ten days of the entry of the recommended order and the assigned judge shall hold a hearing within 20 days of the filing of the objection." Utah Code Ann. § 30–6–4.3(1)(e) (2007). Robinson, however, never filed an objection to the commissioner's proposed findings or recommendation. In his motion contesting the constitutionality of both the commissioner's actions and the Cohabitant Abuse Act, Robinson included an argument that if he

prevailed, a new hearing on the protective order would be necessary. He stated: "[T]he only possible remedy for an unconstitutional delegation of a core judicial function and a violation of Rule 6–401 is a de novo evidentiary hearing/trial before this Court." Because the trial court denied his motion, the rationale advanced by Robinson for a de novo hearing became moot. Robinson did not, however, specifically request a hearing on his motion and, in fact, filed a Notice to Submit that did not include a request for a hearing. As a result, Robinson cannot now complain that he was wrongfully denied a hearing.

## IV. Right to a Jury Trial

■ ¶ 15 We next consider Robinson's argument that the Cohabitant Abuse Act denies him the right to a jury trial in violation of the Seventh Amendment to the United States Constitution and article I, Section 10 of the Utah Constitution. *See* U.S. Const. amend. VII; Utah Const. art. I, § 10. Robinson concedes that the right to a jury trial "extends only to actions that were triable to juries when the Constitution was adopted." *Jensen v. State Tax Comm'n,* 835 P.2d 965, 969 (Utah 1992). He argues, however, that protective orders are analogous to restraining orders and injunctions available under the common law prior to adoption of our constitution. He provides no authority, however, demonstrating that restraining orders or injunctions were subject to trial by jury at common law; and, as the trial court held, they were not. *See Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (stating jury trials were available at common law only where "*legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered" (internal quotation marks omitted)).

■ ¶ 16 Robinson also argues that the relief provided for in the Cohabitant Abuse Act is both equitable and legal, in that the court may address such matters as possession of a firearm and distribution of personal and real property. Again, he cites no authority mandating a jury trial in such situations. Furthermore, there is no right to a

jury trial in domestic cases where there is a similar mix of remedies but those matters remain equitable. *See Noble v. Noble,* 761 P.2d 1369, 1371 (Utah 1988) ("[d]ivorce actions ... are equitable in nature"); *Hyatt v. Hill,* 714 P.2d 299, 302 (Utah 1986) (Howe, J., concurring) (stating that divorce actions are equitable, and thus there is no right to a jury trial).

¶ 17 In addition, the language of the Cohabitant Abuse Act indicates that petitions are to be decided by the court, not a jury. Similar situations exist for both paternity and parental termination statutes. In *Hyatt v. Hill,* 714 P.2d 299 (Utah 1986), where a putative father challenged the denial of his petition for a jury trial in a paternity case, the court stated: "[S]ince there is no inherent constitutional right to a trial by jury in paternity proceedings in this state and the legislature has not provided for such a right by statute, defendant has no right to a trial by jury in this action." *Id.* at 301. Also, in *In re T.R.B. v. State,* 933 P.2d 397 (Utah Ct.App.1997), this court determined that the legislature did not intend the use of juries in parental termination cases. *Id.* at 399. This court stated: "The [Termination of Parental Rights] Act's repeated references to 'the court' as fact-finder supports the conclusion that the legislature intended to exclude the use of juries in termination proceedings." *Id.* The Cohabitant Abuse Act is similar in that it refers only to hearings before a commissioner or judge. *See generally* Utah Code Ann. §§ 30–6–4.2, –4.3 (2007). Moreover, a jury trial would be inimical with the purpose of the Cohabitant Abuse Act, which "[is] to create a timely and simplified process whereby some level of protection and safety could be afforded to victims who had previously been outside the umbrella of orders available to persons involved in criminal prosecutions." *Bailey v. Bayles,* 2001 UT App 34, ¶ 11 n. 4, 18 P.3d 1129. We therefore conclude that there is no constitutional right to a jury trial under either the United States or the Utah constitutions on petitions filed pursuant to the Cohabitant Abuse Act.

## V. Rule 11

¶ 18 The trial court sanctioned Robinson's counsel for violating rule 11(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 11(b). After a hearing, the trial court found that the sanction was warranted because counsel's legal argument concerning the right to a jury trial in Cohabitant Abuse Act cases was not made "after an inquiry reasonable under the circumstances" or "to the best of [counsel's] knowledge, information, and belief." The basis for the finding was that counsel had submitted the identical argument in a prior case before a different judge and the argument was rejected. The trial court noted that counsel had not disclosed the prior proceedings and the result in advancing the same argument in this case. Robinson does not dispute the failure to disclose. We are therefore left with the question of whether those facts support a conclusion that counsel's actions constitute a violation of rule 11. *See Morse v. Packer,* 2000 UT 86, ¶ 16, 15 P.3d 1021 (stating standard of review for legal conclusions in rule 11 cases is correction of error). The rule states, in pertinent part:

> *Representation to court.* By presenting a pleading, written motion, or other paper to the court ... an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after any inquiry reasonable under the circumstances,
>
> . . . .
>
> ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

Utah R. Civ. P. 11(b)(2).

¶ 19 The trial court explained that in the prior case the court rejected Robinson's contention "that injunctions and restraining orders were triable to juries at common law," citing cases that held jury trials were not available at common law for those categories of matters. Nevertheless, counsel resubmitted "the exact same legal contention, without any alteration whatsoever." We do not believe that presenting the same motion to different district court judges in separate cases is, in and of itself, a violation of rule

11(b), where there is no binding appellate law on the issue. This case differs, however, because counsel was on notice of case law that refuted his position and he did not refer to that case law or attempt to provide contrary authority when he again asserted the same argument. Thus, he could not certify "that to the best of [his] knowledge, information, and belief, formed after [reasonable] inquiry," that his argument was "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* R. 22(b). In other words, despite knowledge of case law contrary to his argument, counsel made the same argument, with no case law to support his position. Therefore, we find no error in the trial court's conclusion that counsel violated rule 11(b).

## CONCLUSION

¶ 20 In conclusion, we determine that the authority of court commissioners to conduct evidentiary hearings, enter proposed findings, and make recommendations is not an unconstitutional delegation of core judicial functions. As provided by statute and court rules, parties may object to commissioners' findings and recommendations. Furthermore, because the hearing before the court commissioner in this case was not a settlement conference, it was not subject to rule 6–401(2)(J), requiring certification to a district court judge. *See* Utah R. Jud. Admin. 6–401(2)(J). We also hold that the Cohabitant Abuse Act is not unconstitutional on the basis that it does not provide for a trial by jury. Finally, we affirm the trial court's sanctioning of Robinson's counsel for violating rule 11(b). *See* Utah R. Civ. P. 11(b).

¶ 21 Based on the foregoing, we affirm.

¶ 22 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.

