**2016 UT App 183**

## THE UTAH COURT OF APPEALS

HEARTWOOD HOME HEALTH & HOSPICE LLC,
Appellant,
*v.*
RITA HUBER AND GLENNA MOLYNEUX,
Appellees.

Opinion
No. 20140883-CA
Filed September 1, 2016

Third District Court, Salt Lake Department
The Honorable John Paul Kennedy
No. 120907379

Gary R. Guelker and Janet I. Jenson, Attorneys
for Appellant

Robert H. Wilde and Michael S. Wilde, Attorneys
for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
KATE A. TOOMEY and SENIOR JUDGE JUDITH M. BILLINGS
concurred.[1]

ORME, Judge:

¶1      Heartwood Home Health & Hospice LLC appeals from
the district court's order imposing sanctions against it under rule
11 of the Utah Rules of Civil Procedure.[2] Although other claims

---

1. Senior Judge Judith M. Billings sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

2. Heartwood challenges the rule 11 sanctions, which the district
court ordered on June 20, 2014. But as the appellees point out,
the notice of appeal cited an August 21, 2014 order that awarded

(continued…)

remained pending, Heartwood promptly appealed the rule 11 sanctions, claiming that *Clark v. Booth*, 821 P.2d 1146 (Utah 1991), required the early appeal. *See id.* at 1148. After Heartwood filed its notice of appeal, but before briefing, the Utah Supreme Court issued its opinion in *Migliore v. Livingston Financial, LLC*, 2015 UT 9, 347 P.3d 394. *Migliore* repudiated *Clark*. *Id.* ¶ 21. Because *Migliore* governs this case, we dismiss the appeal for lack of jurisdiction.

BACKGROUND

¶2     The appellees in this case, Rita Huber and Glenna Molyneux (collectively, Appellees), were both employees of Heartwood until sometime in 2012, when they left their jobs to join one of Heartwood's competitors. On October 24, 2012, Heartwood sued Appellees, their new employer, and a third former Heartwood employee. Heartwood alleged breach of contract, breach of the duty of loyalty, breach of the duty of confidentiality, intentional interference with contract, and entitlement to injunctive relief. Appellees and the other defendants brought counterclaims and a third-party complaint, alleging interference with economic relations, defamation, and violations of the Fair Labor Standards Act.

---

(…continued)
the appellees attorney fees. The appellees argue that the August 21, 2014 order only concerned the award of attorney fees and therefore that we should not review the earlier order in which the court determined whether rule 11 sanctions were warranted. In light of our conclusion that neither order constitutes an appealable order, we need not resolve this issue. *See* Utah R. App. P. 3(a); Utah R. Civ. P. 54(a).

¶3     For nearly a year after Heartwood filed the initial complaint, the parties conducted discovery. During discovery, Heartwood's president's deposition was taken.

¶4     In light of that deposition, Appellees' counsel drafted and served Heartwood's counsel with a "Rule 11 Motion and Memorandum" and cover letter. The cover letter described the rule 11 "safe harbor provisions," which require rule 11 claimants to notify the opposing party of an intended rule 11 motion twenty-one days before filing it to allow the opposing party an opportunity to rectify the alleged improprieties. See Utah R. Civ. P. 11(c)(1)(A). The proffered motion would seek sanctions if Appellees were not dismissed from the lawsuit, Appellees insisting that Heartwood lacked a "factual or legal basis" for its claims against them. After the safe-harbor period expired and Heartwood did not dismiss Appellees, they filed the rule 11 motion along with a motion for summary judgment, seeking dismissal of all claims against them. The parties agreed that the rule 11 motion should be decided after the summary judgment motion. The district court later granted summary judgment to Appellees, and shortly thereafter, it granted Appellees' rule 11 motion in a June 20, 2014 order. In its order the court also requested that Appellees submit a fee affidavit, and it granted Appellees an award of attorney fees in an August 21, 2014 order. Heartwood appealed the August 21, 2014 order on September 19, 2014. *See supra* note 2. Heartwood's claims against the other defendants are still pending in the district court, as are Appellees' counterclaims and third-party complaint.

¶5     On January 27, 2015, the Utah Supreme Court issued *Migliore v. Livingston Financial, LLC*, 2015 UT 9, 347 P.3d 394. Citing *Migliore*, Appellees then submitted a motion for summary disposition, asserting that we lack jurisdiction because rule 11 "does not relieve Heartwood from the final judgment rule." We denied that motion but asked the parties, who had not yet

submitted their appellate briefs, to address in their briefing whether *Migliore* governed this appeal.

ANALYSIS

¶6     Heartwood claims that the district court's imposition of rule 11 sanctions against it, "based on [the court's] determination that Heartwood had failed to produce sufficient facts to withstand the defendants' summary judgment motion," was erroneous when "Heartwood had a good faith belief that there was significant circumstantial evidence to support its claims." Because we lack jurisdiction to hear Heartwood's appeal, we do not reach this issue.

¶7     With limited exceptions, a party who is entitled to an appeal may take that appeal only from "final orders and judgments." Utah R. App. P. 3(a). And we generally lack "jurisdiction over an appeal unless it is taken from a final judgment." *Loffredo v. Holt*, 2001 UT 97, ¶ 10, 37 P.3d 1070. This principle promotes judicial economy by preventing piecemeal appellate litigation. *See id.* ¶ 14; *ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254. "To be final, the trial court's order . . . must dispose of all . . . claims [in] an action." *Bradbury v. Valencia*, 2000 UT 50, ¶ 10, 5 P.3d 649. Here, there has been no final judgment, as none of the three orders—the order granting summary judgment to Appellees, the order finding a rule 11 violation, or the order awarding attorney fees as a sanction— were final by their terms nor were they certified as final, *see* Utah R. Civ. P. 54(b), and claims are still pending below. Heartwood does not contend otherwise, but it insists that we have jurisdiction under an exception to the final judgment rule that allows rule 11 matters to be treated independently from the rest of the case.

¶8     Until the Supreme Court's decision in *Migliore*, the timing for appeals of rule 11 sanctions was governed by *Clark v. Booth*,

821 P.2d 1146 (Utah 1991). According to *Clark*, a rule 11 motion "ha[d] no relationship to the disposition of the case on its merits." *Id.* at 1148. Thus, rule 11 sanctions were collateral and could be appealed independently from the merits of the case. *See id.* To that end, Heartwood cited *Clark* in support of its claim that "orders imposing Rule 11 sanctions must be appealed separately via a separate appellate action."

¶9    But in *Migliore*, the Utah Supreme Court expressly repudiated *Clark*, and determined that, because motions for rule 11 sanctions are "requests for attorney fees," we should apply the rule from *ProMax*. *See Migliore*, 2015 UT 9, ¶ 21. According to *ProMax*, judicial economy requires "an appellant to appeal all issues, including an award of attorney fees, in a single notice of appeal." 2000 UT 4, ¶ 15 (citation and internal quotation marks omitted). And *Migliore* "extend[ed] *ProMax* to apply to requests for rule 11 sanctions raised before or contemporaneously with the entry of a final appealable judgment." 2015 UT 9, ¶ 20. But because *Migliore* issued after Heartwood had filed its appeal, we must consider whether *Migliore* applies to this case. We conclude that it does.

¶10    As a general rule, an overruling decision—i.e., a decision by a court rejecting or repudiating a rule previously announced by that same court—applies retroactively unless the decision expressly limits the application of the new rule to "future cases arising from fact situations occurring after the announcement of the new rule." S.R. Shapiro, Annotation, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371, § 1[a] (1966). In Utah, when our Supreme Court issues an overruling decision, "[t]he general rule of retroactivity is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 28, 368 P.3d 846 (citation and internal quotation marks omitted). Perhaps obviously, such an alteration (or new characterization) of the common law "applies retroactively to the

parties who seek it." *SIRQ, Inc. v. The Layton Cos.*, 2016 UT 30, ¶ 6. But less obviously, when "other cases pending on appeal" address the same issue, the parties in those cases "are also entitled to the benefit of such a change in the law," even where the new standard "was not handed down until after trial," so long as there is no effective challenge to the application of the new law.[3] *Id.*

¶11     Under "the modern view," however, Utah courts often consider "relevant judicial policies" in deciding the retroactive operation of a change in the common law. *See Van Dyke v. Chappell*, 818 P.2d 1023, 1025 (Utah 1991). In such circumstances, it is the parties' burden to demonstrate the need for prospective application only. *See Monarrez*, 2016 UT 10, ¶ 28. To this end, the

---

3. Generally, parties are protected from the retroactive application of newly enacted legislation unless the Legislature expressly states otherwise or if an exception applies. *Waddoups v. Noorda*, 2013 UT 64, ¶ 6, 321 P.3d 1108. One such well-established exception is that laws that only affect procedure apply retroactively. *See id.* ¶ 8. While this is not the preferred approach to determining retroactive application of changes to the *common* law, *see* S.R. Shapiro, Annotation, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371, § 5[a] (1966), by analogy, the principles informing this approach also suggest that retroactive application would be appropriate here. The rule under consideration is purely procedural as it impacts only the timing of Heartwood's appeal and does not affect Heartwood's ability to appeal or its likelihood of success in future appeals. *See Waddoups*, 2013 UT 64, ¶ 8 ("However, laws which merely pertain to and prescribe the practice and procedure or the legal machinery by which the substantive law is determined or made effective are procedural and may be given retrospective effect.") (brackets, citation, and internal quotation marks omitted).

party seeking to avoid retroactive application of the new law "must [make] a showing of 'justifiable reliance on the prior state of the law' or that 'the retroactive operation of the new law may otherwise create an undue burden.'" *Id.* (quoting *Van Dyke*, 818 P.2d at 1025). *See also SIRQ*, 2016 UT 30, ¶ 6 (applying an overruling decision to a pending appeal because the parties did not challenge its applicability); *Loyal Order of Moose, # 259 v. County Board of Equalization*, 657 P.2d 257, 265 (Utah 1982) ("Where overruled law has been justifiably relied upon or where retroactive operation creates a burden, the court, in its discretion, may prohibit retroactive operation of the overruling decision.").

¶12   Here, Heartwood challenges the applicability of *Migliore*, but it points us to no law contradicting the general rule favoring retroactivity. And Heartwood has made no "showing" of its justifiable reliance on *Clark*, nor has it shown that our application of *Migliore* would cause an undue hardship. *See Monarrez*, 2016 UT 10, ¶ 28. Instead, the entirety of its argument on this point consists of a brief footnote stating that "the *Migliore* decision was published approximately five months after the district court entered its Rule 11 Judgment in this matter. Therefore, [*Clark*] still applied at the time Heartwood filed its Notice of Appeal and the Rule 11 Judgment should be treated separately from the underlying lawsuit." This "bare assertion" provides us with no basis upon which to depart from the general rule. *See Monarrez*, 2016 UT 10, ¶ 28 (citation and internal quotation marks omitted). In other words, Heartwood simply has not meaningfully challenged the retroactive application of *Migliore*, *see SIRQ*, 2016 UT 30, ¶ 6, and we therefore conclude that the *Migliore* rule applies to this case.

CONCLUSION

¶13   *Migliore* governs the timing of Heartwood's appeal. And because it requires that attorney fee awards, including those awards imposed as rule 11 sanctions, must be raised in a single

appeal after entry of a final judgment, *see Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 21, 347 P.3d 394, Heartwood's appeal is premature, and we are jurisdictionally barred from reaching its merits.[4] Accordingly, we dismiss the appeal without prejudice to the filing of a timely appeal after the entry of a final, appealable judgment.

––––––––––

4. Paradoxically, application of the *Migliore* rule, which advances the cause of judicial efficiency across the board, actually impedes it here. The narrow issue on appeal has been briefed and argued. We could decide the issue now and spare the parties the burden of rebriefing and, perhaps, rearguing the issue. And we would spare the Utah Supreme Court, or, more likely, another panel of this court, from having to come up to speed on the issue raised in the instant appeal. Unfortunately, because the final judgment rule is jurisdictional and not discretionary, we are powerless to decide the merits of the appeal for the sake of convenience.